# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW McKERCHER, <br> Plaintiff, <br> v. <br> RON MORRISON, <br> Defendant. | CASE NO. 18cv1054 JM(BLM) <br> ORDER GRANTING MOTION TO DISMISS |

Defendant Ron Morrison, Mayor of National City ("Morrison"), moves the court to dismiss Plaintiff Andrew McKercher's federal civil rights claim, to decline to exercise jurisdiction over the state law claim, and to dismiss the action under qualified immunity principles. Plaintiff opposes the motion. Pursuant to Local Rule 7.1(d)(1), the court finds the matters appropriate for decision without oral argument. For the reasons set forth below, the court grants the motion to dismiss the claims for injunctive and declaratory relief as moot, grants Morrison's motion for qualified immunity on the federal constitutional claim (the First Cause of Action), declines to exercise jurisdiction over the state constitutional claim (the Second Cause of Action), and instructs the Clerk of Court to close the file.

**BACKGROUND**

Filed on November 26, 2018, the Second Amended Complaint ("SAC") alleges two claims for relief: (1) violation of the First Amendment of the United States Constitution and (2) violation of the right to free expression guaranteed by the

California Constitution. In broad brush, Plaintiff alleges that Morrison, sued in his individual capacity while acting under color of state law, violated federal and state constitutional rights when he blocked Plaintiff from accessing Morrison's personal Facebook website in retaliation for, among other things, "criticizing him as an elected official." (SAC ¶10(K)).[1]

Plaintiff, a resident of National City, California, alleges that he has been blocked from accessing Morrison's personal Facebook page because he has "consistently spoken his mind whenever it appeared that the best interests of his fellow residents and taxpayers were being subordinated to the whims of capricious, corrupt City officials." (SAC ¶1). By way of example, Plaintiff has commented on what he perceives to be Morrison's preferential treatment of a National City councilman, the City's perceived pursuit of anti-immigrant policies, and the City providing preferential treatment to business interests. Id.

Plaintiff alleges that Morrison maintains his personal Facebook page "in order to communicate with the public about official City matters." (SAC ¶2). Morrison allegedly "uses the social-media platform to promote his mayoral feats and to bask in the glory of his fans' friendly feedback." (SAC ¶1). Morrison allegedly blocked Plaintiff as "'pay back' for past criticism and to prevent him from publicizing his concerns in the future." Id. Plaintiff seeks compensatory damages, punitive damages, injunctive and declaratory relief, and attorney's fees and costs.

As of December 18, 2018, Morrison completed his term as mayor. However,

---

[1] Facebook, Inc. is an online social media and social networking service company. In general, the "Facebook service can be accessed from devices with Internet connectivity, such as personal computers, tablets and smartphones. After registering, users can create a customized profile revealing information about themselves. Users can post text, photos and multimedia of their own devising and share it with other users as 'friends'. Users can use various embedded apps, and receive notifications of their friends' activities." Wikipedia, Facebook, http:www.wikipedia.org (last visited February 21, 2019). The Facebook account holder determines whether to allow a "friend" request, thus permitting the "friend" to access the account, or denying the "friend" request thereby blocking access to the Facebook account. See Facebook Help Center, http://www.facebook.com/help/privacy (last visited February 21, 2019).

Morrison was elected to the position of vice mayor and continues to serve in that capacity. In late May or early June 2018, Morrison unblocked Plaintiff, and all other individuals, who he had blocked from accessing his personal Facebook page. (Morrison Decl. ¶3).[2] The official National City Facebook page, distinct from Morrison's personal Facebook page, identifies Morrison as vice mayor and states at the bottom of the page, "For the latest updates on National City send Ron Morrison a 'friend' request on Facebook." (SAC ¶10N).

**DISCUSSION**

**Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, 556 U.S. 662 (2009) (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th

---

[2] Plaintiff acknowledges that he is no longer blocked from posting comments on Morrison's facebook page. (Oppo. at p. 10:12-17). To the extent Plaintiff argues that Morrison retains control over who is "friended," a feature of Facebook, he lacks standing, as more fully discussed herein, to assert claims on behalf of individuals who are not present before the court.

Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

**Mootness**

The Supreme Court has noted that the doctrine of mootness requires that the "requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Arizonans for Official English v. Arizona, 520 U.S. 43, 68, n.22 (1997). Here, Plaintiff's claims for injunctive and declaratory relief are moot. Since just after the filing of the original complaint, and before service of the complaint and summons, Plaintiff "unblocked everyone on [Morrison's] Facebook page." (Morrison Decl. ¶3). Plaintiff does not dispute that he is free to post comments on Morrison's web site. Rather, Plaintiff contends that individuals who desire to access Morrison's Facebook page must first send Morrison a "friend" request and second, Morrison must approve the new "friend" request to gain access to his Facebook page. According to Plaintiff, this "shows not only that it would be easy enough for Defendant to keep people from commenting on his Facebook page but that he is doing so at this very moment." (Oppo. at p.5:21-22).

Plaintiff's arguments run afoul of both the mootness and standing doctrines. Plaintiff no longer has a personal interest in his claims for injunctive or declaratory relief because he obtained the relief requested - the ability to access and comment on Morrison's Facebook page. Similarly, Plaintiff has no personal stake in whether

unidentified individuals may or may not have been blocked from accessing Morrison's Facebook page. Plaintiff's claims for injunctive and declaratory relief are, therefore, moot.

In sum, the court dismisses the injunctive and declaratory relief claims as moot.

**Qualified Immunity**

The defense of qualified immunity protects "government officials . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The rule of qualified immunity protects " 'all but the plainly incompetent or those who knowingly violate the law.' " Saucier v. Katz, 533 U.S. 194, 202,(2001) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)). A defendant may have a reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Id. "Therefore, regardless of whether the constitutional violation occurred, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." Romero v. Kitsap County, 931 F.2d 624, 627 (9th Cir.1991).

The defense of qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S.223, 230 (2009). Determining whether an official is entitled to qualified immunity requires a two-part analysis. Saucier, 533 U.S. at 201; Ramirez v. City of Buena Park, 560 F.3d 1012, 1020 (9th Cir.2009). First, a court must decide whether the factual record, viewing the record in the light most favorable to Plaintiff, establishes that Morrison violated a constitutional right. Id. Second, the court must decide whether the statutory or constitutional right at issue was "clearly established." Id. A right is "clearly established" for the purpose of qualified immunity if " 'it would be clear to a reasonable [official] that his conduct was unlawful in the

situation he confronted' ... or whether the state of the law [at the time of the alleged violation] gave 'fair warning' to [him] that [his] conduct was unconstitutional." Clement v. Gomez, 298 F.3d 898, 906 (9th Cir.2002) (quoting Saucier, 533 U.S. at 202). This inquiry " must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (per curium).

Because qualified immunity is an affirmative defense, the initial burden of proof lies with the official asserting the defense. Harlow, 457 U.S. at 812; Houghton v. South, 965 F.2d 1532, 1536 (9th Cir.1992). Finally, while often beneficial to approach the two-part inquiry in the sequence prescribed above, it is not mandatory. Pearson, 129 S.Ct. at 818. A court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." Id.; Ramirez, 560 F.3d at 1020. A court may grant defendants qualified immunity and dismiss plaintiff's claim if at any point the court answers either prong in the negative. See e.g., Tibbetts, 567 F.3d at 536-39 (bypassing the first prong and granting the defendants qualified immunity because the plaintiff's due process claim was not a "clearly established right" at the time of the alleged violation). See Mullenix v. Luna, – U.S. – , 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015).

At the outset, the court highlights that there is a paucity of binding authority addressing the First Amendment as applied to social media platforms in the context of access to a state actor's personally owned and operated Facebook page. The parties primarily rely on contradictory District Court cases. For example, Morrison cites several district court opinions finding that the law regarding private Facebook accounts maintained by public officials "is less than settled." Davison v. Rose, 2017 WL 3251293 (E.D. Vir. July 28, 2017). In Davison, the plaintiff alleged that the deletion of a comment left on the official Loudoun County Facebook page, and blocking further posts, violated his First Amendment rights. Without discussing the nature of the forum at issue, the district court concluded that the defendants were entitled to qualified

immunity because of the unsettled nature of the law regarding a Facebook account maintained by a public official. In other words, the court concluded that the right was not clearly established.

In <u>Morgan v. Bevin</u>, 286 F.Supp.3d 1003 (E.D. Ky 2018), the Governor of Kentucky maintained Facebook and Twitter accounts "in order to communicate [the Governor's] vision, policies, and activities to constituents and receive feedback from them on the specific topics that he chooses to address in his posts." <u>Id.</u> at 1006). Plaintiffs in that case had criticized the Governor for his failure to timely pay his property taxes and for his right-to-work policies. Plaintiffs were blocked from accessing the Governor's Facebook and Twitter accounts. The Governor also established automatic filters to block posts that are obscene, abusive, or spam. On the evidentiary record before the court, the court was "convinced that Governor Bevin's use of privately owned Facebook Page and Twitter pages is personal speech, and, because he is speaking on his own behalf, even on his own behalf as a public official, "the First Amendment strictures that attend the various types of government-established forums do not apply."

The <u>Morgan</u> court noted that there is "no constitutional right as members of the public to a government audience for their policy views, <u>Minn. State Bd. for Cmty. Colleges v. Knight</u>, 465 U.S. 271, 286 (1984)," and concluded that "Governor Bevin's Twitter and Facebook accounts are privately owned channels of communication and are not converted to public property by the use of a public official. Simply put, this is unlike any type of property typically protected by First Amendment forum analysis law." 298 F.Supp.3d at 1012. The court denied the motion for preliminary injunction because plaintiffs failed to demonstrate the requisite likelihood of success on the merits, noting that "Governor Bevin is not suppressing speech, but is merely culling his Facebook and Twitter accounts to present a public image that he desires." 298 F.Supp.3d at 1013.

Plaintiff contends that qualified immunity principles do not apply in this case

because the First Amendment clearly protects an individual's right to criticize public officials and any "retaliation for the exercise of one's First Amendment right amounts to a constitutional violation." (Oppo. at p.6). The Supreme Court has repeatedly rejected defining the constitutional right at issue at a such a high level of generality as Plaintiff does here. The qualified immunity issue is "whether the violative nature of particular conduct is clearly established." This inquiry " 'must be undertaken in light of the specific context of the case, not as a broad general proposition.' " Brosseau, 543 U.S. at 198; City of Escondido v. Emmons, 139 S.Ct. 500 (2019) ("the clearly established right must be defined with specificity"). The authorities relied upon by Plaintiff simply fail to address the First Amendment in the specific context of a state actor using private social media to communicate with, among others, members of the public.

Here, the constitutional limitations and the current state of the law, as applied to state actors using social media forums, are in flux, significantly impacted by rapid technological developments and a lagging legal framework to address those technological changes. The court concludes that the issue of a public official's private use of social media platforms like Facebook to communicate with, among others, constituents is not well-settled, to say nothing of "clearly established." The district court authorities cited by the parties take contrasting views on the applicability of the First Amendment to social media websites like Facebook. As instructed by the Supreme Court, "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Plumoff v. Rickard, 134 S.Ct. 2012, 2023 (2014). There should exist "a body of relevant law . . . to clearly establish" the unlawfulness of an official's conduct before civil rights liability may attach. See Emmons, 139 S.Ct. at 503. Plaintiff has cited neither Supreme Court authority nor any other binding authority to buttress his argument. Plaintiff simply fails to meet his burden to show that the contours of the right were

clearly established. See Sharp v. County of Orange, 871 F.3d 901, 901 (9th Cir. 2017).

In sum, the court finds that qualified immunity principles apply under the circumstances of this case to bar Plaintiff's First Amendment claim.

**The State Law Claim**

Morrison also moves to dismiss the Second Cause of Action for violation of the state constitution. In light of the dismissal of the federal claim, the court declines to exercise supplemental jurisdiction over the state law claim. See Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 82, 806 (9th Cir. 2001). This claim is dismissed without prejudice.

In sum, the court grants the motion to dismiss the claim for injunctive and declaratory relief as moot, grants Morrison's motion for qualified immunity on the federal constitutional claim (the First Cause of Action), declines to exercise jurisdiction over the state constitutional claim (the Second Cause of Action), and instructs the Clerk of Court to close the file.

**IT IS SO ORDERED.**

DATED: March 8, 2019

_____
Hon. Jeffrey T. Miller
United States District Judge

cc: All parties